UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADRIAN WINTERS,

       Plaintiff,                                Civil Action No.
                                                06-CV-10263-DT

vs.

                                                HON. BERNARD A. FRIEDMAN

FORD MOTOR CO.,

       Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 5)

This matter is presently before the Court on Defendant's Motion to Dismiss or for Summary Judgment. Adrian Winters ("Plaintiff") is an ex-employee of Ford Motor Company ("Defendant"). Plaintiff alleges that she was wrongfully terminated from her position as production associate after she had to leave work in order to seek emergency medical treatment for severe stomach pains. The Complaint contains two breach of contract claims, which were originally brought by Plaintiff in state court. Defendant removed the case to this Court, arguing that federal question jurisdiction exists on the grounds that Plaintiff's claims are preempted by federal labor law. Defendant further argues that the action is time-barred because Plaintiff failed to bring the claims within the applicable limitations period.

The Court has reviewed the motion and relevant documents in this case. Pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), the Court shall decide the motion without oral argument. The Court will grant summary judgment in favor of Defendant.

**I.         HISTORY OF THE CASE**

      **A.       FACTUAL BACKGROUND**

Plaintiff alleges that Defendant improperly terminated her on February 9, 2004. Plaintiff began working for Defendant in March 1997, as a production associate at Defendant's Michigan Truck Plant in Wayne, Michigan. (Compl. ¶¶ 7-8.) Subsequently, Plaintiff was discharged by Defendant.[1] (*Id*. at ¶ 9.) On or about December 3, 2001, Plaintiff was reinstated by Defendant pursuant to a General Reinstatement Waiver, which stated, in relevant part, that "[a]ll medical leaves of absence must be approved by the Plant Physician in advance, unless [Plaintiff is] . . . totally incapacitated."[2] (Compl. ¶ 11.)

Plaintiff states that beginning on or about February 2, 2004, she began to experience severe stomach pains while at work. (*Id*. at ¶ 14.) According to Plaintiff, her symptoms included diarrhea, vomiting, and fatigue. (*Id*. at ¶ 15.) As a result of these symptoms, Plaintiff states that she was forced to leave work early, without first securing medical leave from the Plant's physician, to go to a local hospital in order to receive emergency medical treatment. (*Id*. at ¶ 16.) Plaintiff further asserts that she was thereafter diagnosed with acute gastroenteritis and given medical documentation stating that she could return to work on February 9, 2004. (*Id*. at ¶¶ 17, 36.) Defendant, however, claims that Plaintiff was only "totally incapacitated" until February 4, 2004. Therefore, Defendant states that Plaintiff was required to either return to work on that day or secure the permission of the Plant physician before continuing her medical leave

---

[1] According to Defendant, Plaintiff was discharged for "excessive absenteeism." (Def.'s Mot. to Dismiss or for Summ. J., at 2.)

[2] The waiver is signed by three people: Plaintiff, a Ford representative, and a union representative. (*Id*. at Ex. A.)

2

of absence from February 4 through February 8, 2004. (Def.'s Mot. to Dismiss or for Summ. J., at 2-3.)

Plaintiff alleges that Defendant violated two different contracts by terminating her on February 9, 2004.[3] (See Compl., at 4-5.) First, Count I of Plaintiff's Complaint claims that Defendant breached a collective bargaining agreement, between Defendant and the UAW Local No. 900, that provides in relevant part:

> Section 3: Discipline and Discharge
>
> The company retains the sole right to discipline and discharge employees for cause, provided that in the exercise of this right it will not act wrongfully or unjustly or in violation of the terms of this Agreement. In imposing discipline on a current charge, the Company will not take into account any prior infraction which occurred more than 18 months previously.

Specifically, Plaintiff contends that Defendant violated the collective bargaining agreement by terminating her without "just cause." (Compl. ¶ 27.)

Second, Count II of Plaintiff's Complaint alleges that Defendant breached the General Reinstatement Waiver, as quoted above. (*See* Compl., at 5.) Specifically, Plaintiff alleges that she was "totally incapacitated" until February 9, 2004, and she therefore was not required to secure the approval of the plant physician at any point during her medical leave of absence. (*Id.* at ¶ 42.)

On the other hand, Defendant asserts that Plaintiff was "totally disabled" only on February 2 and 3, 2004, and therefore she was able to return to work on February 4, 2004. Thus,

---

[3] Prior to filing the Compliant, Defendant states that Plaintiff filed a grievance through the UAW Local 900 in order to contest her termination on February 9, 2004. (Def.'s Mot. to Dismiss or for Summ. J., at 3). According to Defendant, the grievance was denied by Ford at both the second and third stages of the grievance process and subsequently, the UAW withdrew the grievance on June 22, 2004. (*Id.*)

3

Defendant contends that the terms of the General Reinstatement Waiver required Plaintiff to secure the Plant physician's approval before taking medical leave from February 4 through February 8, 2004.  Defendant states that her failure to secure such approval resulted in her discharge on February 9, 2004.  (Def.'s Mot. to Dismiss or for Summ. J., at 3.)

### B.     PROCEDURAL HISTORY

On December 12, 2005, Plaintiff commenced this action in Wayne County Circuit Court. On January 19, 2006, Defendant filed a Notice of Removal.  Plaintiff did not file a Motion to Remand.  Defendant filed an Answer containing affirmative defenses on January 31, 2006.

On May 1, 2006, Defendant filed a Motion to Dismiss or for Summary Judgment. Plaintiff did not file a Response.

On November 14, 2006, the Court cancelled the motion hearing that had been scheduled for November 22, 2006.

## II.    DEFENDANT'S MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may make a motion to dismiss for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6). As long as a plaintiff presents factual allegations, a "court must construe the complaint in a light most favorable to the plaintiff [and] accept all of the factual allegations as true."  *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).  However, a court should dismiss a claim when "there is no set of facts that would allow the plaintiff to recover."  *Carter by Carter v. Cornwell*, 983 F.2d 52, 54 (6th Cir. 1993).

Defendant argues that this case should be dismissed pursuant to Rule 12(b)(6) because both of Plaintiff's breach-of-contract claims, although pled as state law claims and originally

filed in state court, are preempted by federal labor law. As such, Defendant argues that Plaintiff fails to state a claim upon which relief can be granted.

 1. *Does Federal Law Preempt Plaintiff's Purported State Law Claims?*

In determining whether a federal statute preempts a state law, the relevant inquiry is whether Congress, in enacting the federal law, intended to exercise its constitutionally delegated authority to set aside the state law. *E.g., Barnett Bank of Marion Co., N.A. v. Nelson*, 517 U.S. 25, 30 (1996). If so, the Supremacy Clause requires courts to follow the federal law, and not the state law. U.S. CONST. art. 6, cl. 2.

The most appropriate starting place for the analysis is the federal statute itself. According to section 301(a) of the Labor-Management Relations Act[4] ("LMRA"), "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). Where a purported state law claim for breach of a labor contract is preempted by section 301, the claim is transformed into a "hybrid" section 301 claim. *E.g., Jones v. General Motors Corp.*, 939 F.2d 380, 384 (6th Cir. 1991). A hybrid section 301 suit is one involving claims against the employer for breach of a collective bargaining agreement and against the union for breach of the duty of fair representation. *Id.*

Both the United States Supreme Court and the Sixth Circuit have had numerous occasions to interpret section 301(a), and several firmly established rules have resulted. First, federal courts have routinely held that where a state law claim brought by a union-member

---

[4] 29 U.S.C. § 185(a) is the codification of section 301(a) of the LMRA.

plaintiff requires interpretation of a pertinent collective bargaining agreement, the state law claims are considered dependant on section 301(a) and preemption applies.[5] Therefore, section 301 preempts state law claims that are "substantially dependent" on an interpretation of the underlying collective bargaining agreement. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 384 (1987). *See also Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988) (stating that when the resolution of a state law claim depends on the meaning of a collective bargaining agreement, the application of state law is preempted and federal law principles must be used to resolve the dispute).

In *DeCoe v. General Motors Corp.*, the Sixth Circuit employed a two-part test to determine whether a state law claim is independent of an action under section 301(a). 32 F.3d 212, 216 (6th Cir. 1994). The *DeCoe* court held that a court must first determine whether proof of the state law claim requires interpretation of the collective bargaining agreement's terms, and secondly, a court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law.

As mentioned above, section 301(a) of the LMRA reads, in relevant part, "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). The United States Supreme Court has held that the word "contract," as used in section 301(a), encompasses documents beyond just the collective bargaining agreement itself. *Retail Clerks Int'l Ass'n, Local Union Nos. 128 & 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17, 25-26 (1962) (finding a "strike agreement" to be a "contract" for the purpose of section 301(a)). In particular,

---

[5] The purpose of section 301(a)'s preemptive effect is to ensure uniformity in this area of federal law. *In re Glass Workers, Local No. 173*, 983 F.2d 725, 728 (6th Cir. 1993).

lower courts have consistently declared "conditional reinstatement agreements" (i.e. "last chance agreements") to be "contracts" for section 301(a) purposes.

For example, in *Cotter v. DaimlerChrysler Corp.*, 87 F. Supp. 2d 746, 757 (E.D. Mich. 2000), the court found that a conditional reinstatement agreement "must be treated in the same manner as the collective bargaining agreement [for section 301(a) purposes] since it is a negotiated agreement that supplements [a collective bargaining agreement]." Other circuits have similarly held that last chance agreements are equivalent to collective bargaining agreements for the purposes of section 301(a) preemption. *See, e.g., Int'l Union of Operating Eng'rs Local 351 v. Cooper Natural Res., Inc.*, 163 F.3d 916, 919 (5th Cir. 1999), *cert. denied,* 528 U.S. 812 (1999) (holding that "last chance agreements constitute formal contractual settlements of labor disputes" and, as they follow collective bargaining agreements in time, should be construed as superseding collective bargaining agreements); *Coca-Cola Bottling Co. v. Teamsters Local Union No. 688,* 959 F.2d 1438, 1440-41 (8th Cir. 1992), *cert denied,* 506 U.S. 1013 (1992) (holding that last chance agreements supersede collective bargaining agreements).

Moreover, there is a very strong presumption that section 301(a) preempts state claims concerning contracts between an employer and a labor organization representing employees. Indeed, the Sixth Circuit, in *Roddy v. Grand Truck Western Railroad Inc.*, held that the doctrine of "complete preemption" applies to LMRA:

> The "complete preemption" doctrine . . . recognizes that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.
>
> Complete preemption applies where the pre-emptive force of a statute is so "extraordinary" that it converts an ordinary state common-law complaint into one stating a federal claim . . . . Once an area of state law has been completely pre-empted, any claim

7

> purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.

395 F.3d 318, 323 (6th Cir. 2005) (citations and quotations omitted).  If section 301 preempts a union-member plaintiff's purported state law claims, such claims must either be treated as a hybrid section 301 claim or dismissed as preempted by federal labor law.  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220-221 (1985).  In other words, where a purported state law claim requires interpretation of, or is substantially dependent on, a pertinent collective bargaining agreement or other superseding contract between an employer and a labor organization—such as a last chance agreement—federal labor law must be used to resolve the dispute.  If not, the claim(s) must be dismissed.

Here, Plaintiff's allegations are preempted by section 301 because both counts of Plaintiff's Complaint fall under the "complete preemption" doctrine.  Therefore, Plaintiff's purported state law claims are considered federal hybrid section 301 claims from their inception.  As stated above, Count I alleges a breach of the pertinent Union Agreement between the parties.  Clearly, adjudication of this claim requires interpretation of, and is "substantially dependent" on, the Union Agreement itself.  Therefore, this claim must either be treated as a section 301 action or else dismissed.

Moreover, Count II alleges a breach of the General Reinstatement Waiver.  Despite a slight case-by-case difference in the title of these types of waivers, the General Reinstatement Waiver in this case is equivalent to a "conditional reinstatement waiver" or "last chance agreement."  Accordingly, the General Reinstatement Waiver is a "contract" for section 301 purposes.  The adjudication of Count II would clearly require interpretation of the Waiver.  Therefore, Count II is similarly preempted by federal labor law and consequently must be treated

as a hybrid section 301 claim or else dismissed. In this case, the Court will interpret Plaintiff's cause of action as a hybrid section 301 claim.

### 2. *Did Plaintiff Assert A Hybrid Section 301 Claim Upon Which Relief Can Be Granted?*

As previously mentioned, a hybrid section 301 claim has two constituent elements: (1) breach of a collective bargaining agreement by the employer and (2) breach of the duty of fair representation by the union. *Black v. Ryder/P.I.E. Nationwide Inc.*, 15 F.3d 573, 583 (6th Cir. 1994). In order for a union-member plaintiff to be successful in a hybrid section 301 action, he must demonstrate *both* a violation by the employer of the collective bargaining agreement *and* a breach by the union of its duty of fair representation. *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003). Here, Plaintiff alleges a claim with respect to Defendant's breach of the collective bargaining agreement. However, the question remains as to whether Plaintiff has asserted a claim of unfair representation by the union.

A union-member plaintiff wishing to pursue a cause of action for breach of a union's duty of fair representation has the burden of showing that the union's action was "arbitrary, discriminatory, or in bad faith." *Allen v. CSX Transp., Inc.* 325 F.3d 768, 772 (6th Cir. 2003) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)). Where a union-member plaintiff does not introduce factual allegations that the union breached its duty of fair representation, dismissal based on Rule 12(b)(6) is proper.

In this case, Plaintiff has not alleged any wrongdoing on the part of the UAW Local 900. The Complaint alleges only wrongdoing on the part of Defendant. For this reason, Plaintiff's Complaint could be dismissed under Rule 12(b)(6), as Plaintiff has not alleged any set of facts in support of an unfair representation claim, which is required of a union-member plaintiff wishing

9

to assert a hybrid section 301 claim. Therefore, the dismissal of Plaintiff's entire Complaint based on Rule 12(b)(6) would be proper. However, in this case, the Court will dismiss the Complaint based on Rule 56(c).

### III.     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Marrs v. Tuckey*, 362 F. Supp. 2d 927, 934 (E.D. Mich. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Thus, the Sixth Circuit has explained that the non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

A defendant may file a motion for summary judgment based on a defense that entitles the defendant to a judgment as a matter of law and where no triable issues of fact are presented. *See Bank One Trust Co. v. County of Iosco*, 597 F. Supp. 586, 587-88 (E.D. Mich. 1984) (citing 10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2734 (2006)). For example, defendants commonly file for summary judgment based on the expiration of the applicable limitations period. Such is the case here, as Defendant

asserts that the statute of limitations should bar Plaintiff's claim. Thus, summary judgment could be granted if this Court finds that the applicable statute of limitations has expired, and Plaintiff has not introduced any facts that raise a genuine issue as to whether the statute of limitations should have been stopped. Here, Plaintiff did not file a Response brief and therefore has not raised any argument that the statute of limitations should have been tolled. As such, the only remaining question is whether the applicable statute of limitations expired before Plaintiff filed this suit.

Congress did not provide a specific statute of limitations for hybrid section 301 claims. "Historically . . . when Congress declines to provide a limitations period for a federal cause of action, the courts apply limitations periods from state law." *Cummings v. John Morrell & Co.*, 36 F.3d 499, 502 (6th Cir. 1994). However, the United States Supreme Court has recognized an exception to this rule with respect to hybrid section 301 claims. In *DelCostello v. Teamsters*, 462 U.S. 151, 169 (1983), the Court held that section 10(b) of the National Labor Relations Act[6] ("NLRA") supplies the applicable limitations period for hybrid section 301 actions.[7] *See also*

---

[6] 29 U.S.C. § 160(b) is the codification of section 10(b) of the NLRA.

[7] Prior to *DelCostello*, state law dictated the limitations period for hybrid section 301 claims. However, the United States Supreme Court "later abandoned the reliance on state statutes of limitations for § 301 actions, and instead applied the federal limitations period for unfair labor practice charges, § 10(b) of the NLRA." *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 566 n.5 (1990).
   The *DelCostello* Court cautioned that it did "not mean to suggest that federal courts should eschew use of state limitations periods anytime state law fails to provide a perfect analogy." 462 U.S. at 171. Indeed, in a case decided six years after *DelCostello*, the United States Supreme Court called *DelCostello* a "closely circumscribed" and "narrow" exception to the usual rule that statutes of limitation are to be borrowed from state law, rather than federal law. *Reed v. United Trans. Union*, 488 U.S. 319, 324 (1989). Accordingly, it should be noted that although federal courts are required to borrow a federal statute of limitations with respect to *hybrid* section 301 claims, "federal courts may still resort to the most analogous state statute of limitations where . . . the action does not implicate the breach of the union's duty of fair representation." *Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1216 (6th Cir. 1987) (citing *Cent. States Southeast and Southwest Areas Pension Fund v. Kraftco*, 799 F.2d 1098, 1107 (6th Cir. 1986) (en banc)). The

*Robinson v. Cent. Brass Mfg. Co.*, 987 F.2d 1235, 1238 (6th Cir. 1993) (holding that section 10(b) of the NLRA applies to hybrid section 301 claims).  That limitations period is six months.

There is a tremendous amount of case law relating to when the six-month limitations period begins to run.  Generally, however, a section 301 claim accrues "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation."  *Adkins v. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO-CLC,* 769 F.2d 330, 335 (6th Cir. 1985); *Robinson*, 987 F.2d at 1239; *Jones*, 939 F.2d at 384.

Here, the facts giving rise to the alleged violation occurred from February 2, 2004 (when Plaintiff first became sick at work) until, at the latest, June 22, 2004 (when the union withdrew Plaintiff's grievance, leading Plaintiff to file the instant suit).  Therefore, the latest time that Plaintiff could have reasonably discovered the alleged violation was June 22, 2004.  Accordingly, Plaintiff had until six months after June 22, 2004, which is December 22, 2004, to file the instant suit.  Because Plaintiff did not file until December 12, **2005**, nearly a full year beyond the time prescribed by the applicable six-month limitations period, Plaintiff's two claims are time-barred. Therefore, summary judgment in favor of Defendant on both Counts is proper.

---

*Kraftco* case is an example of a section 301 action that does not implicate the union's duty of fair representation.  The *Kraftco* court held that where a *union* is suing an employer for breach of the pertinent collective bargaining agreement, courts may borrow a state statute of limitations because the union's duty of fair representation is not implicated, and *DelCostello* therefore does not apply.  *Id.*

However, *DelCostello* and the federal *six-month* limitations period are controlling in the case at hand.  This is because this case is not a situation where the *union* is suing the employer, but instead a hybrid section 301 claim where an *employee* has sued the employer.  Unlike *Kraftco*, where the duty of fair representation was not a part of the claim, the union's duty of fair representation is very much implicated by the claim here.

12

## IV.　CONCLUSION

For the reasons stated above, the Court could dismiss the Complaint because Plaintiff did not allege a breach of the union's duty of fair representation. However, in this case, summary judgment is proper. Regardless of whether Plaintiff had plead a sufficient hybrid section 301 claim, the action is still time-barred. Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment is granted.

IT IS FURTHER ORDERED that Plaintiff's Complaint is dismissed with prejudice.

_s/Bernard A. Friedman
_____
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: December 12, 2006
　　　　Detroit, Michigan

I hereby certify that a copy of the foregoing document
was served this date upon counsel of record
electronically and/or via first-class mail.

_____**/s/ Patricia Foster Hommel**_____
　　　　**Patricia Foster Hommel**
　　**Secretary to Chief Judge Friedman**